United States v. Leonard May it please the Court. This is an appeal involving a denial of a sentence reduction under Section 3582C. I respectfully submit that there are three reasons why Mr. Leonard is eligible for a sentence reduction. First is that this Court in May 2016 decided a case, McCall, which the government concedes, and this is in their footnote 5, is factually, materially indistinguishable from this case. And in that case, this Court said the defendant was eligible. Second, in this case... That's a summary order, too. It is, it is, and I said yes, true. It is, I would submit, persuasive authority. I would say that decision is very thorough, well-reasoned. I do not believe that there is a reason to analytically distinguish it. Secondly... I guess the government argues that there the government agreed that Justice Sotomayor's concurrence was binding, and here it does not. I suppose we can, I read it differently, that summary order as to what they concede. Well, the summary order does say the government, the parties agree that Justice Sotomayor's concurrence governs the case. Right. The government, as I understand it, their argument here is that Freeman does not apply at all. I take it from that statement that it goes to, is it Justice Sotomayor's concurring opinion controlling as opposed to the plurality opinion? It's part of Justice Sotomayor's opinion. I mean, as I understand it, you're relying on the part in which in a footnote she says that had the District Court calculated the guidelines differently, it's from the plea agreement, the plea agreement would still have been the operative act. That is not essential to the opinion, to the conclusion in Freeman, where after all the calculation by the judge and the parties' 11C1C agreement were identical. So, I'm not sure that that footnote is controlling of anything. Indeed, it seems to be dicta in Freeman itself. What am I missing? Well, what I would point to, and I did look at this in terms of Freeman, and I think the plurality opinion now does come in analytically of what was the question that Freeman addressed. And the plurality opinion stated what the question was, and the question was very broad. The question was, under what circumstances is a defendant who executes a Rule 11C agreement eligible under Section 3582? Right. It was decided in the context of a case in which the defendant had an 11C1C agreement that calculated the guidelines the same as the District Court did. The dissenters thought once you pleaded guilty under an 11C1C agreement, you weren't sentenced under the guidelines at all, and therefore you got no opportunity for a sentencing reduction. Justice Sotomayor agreed that you were being sentenced under your agreement, not under the guidelines. But then she came up with a different theory for why the defendant was entitled to relief. There's no conflict with the plurality whose conclusion she joins in her discussion of the agreement's guideline range there because it was the same. Her footnote, though, is not what the Court was considering. They weren't considering an 11C1C agreement that had a different guideline range from how the guidelines were calculated by the Court. That's your case. And I would submit— And there you've got a problem because the guidelines themselves define applicable guideline range, and this is in the commentary to 1B1.0, as the guideline range that corresponds to the offense level determined pursuant to 1B1.1, which is determined before consideration of any departure provision in the Guidelines Manual or any variance. I'd suggest to you that what the district court did here was it calculated Blender's guidelines range at 121 to 151 months, and then it accepted the party's agreement to what was effectively a variance to a 97 to 121-month range. Why is that not the right way to look at this? I respectfully submit that how Judge Sotomayor addressed the analysis with regard to, based on that language in Section 3582, that same analysis applies to, then, the guidelines and the applicable guideline sentence. And what I mean by that is— No one agreed with her. Both the plurality and the dissenters disagreed with that part of her opinion. And what I would say, though, is—and I submit well-reasoned— is that if we say what you should look at—and I think that's the essential thing that we're talking about here. This is the core of what needs to be addressed in the analysis here, is what do you look at and what can you look at. What's the guideline range? Well, here, if I can say, is— To answer that question, what do you think the Court arrived at as the guideline range? Was it 121 to 151 or the lower range that was in the plea agreement before he sentenced? Well, we have, also, an alternative argument. I think if you're saying Judge Sotomayor's concurring opinion is not binding here— Judge Sotomayor's opinion being binding in answer to Judge Sotomayor's question. I would say, then, that you look to the plea agreement, just as she looked to the plea agreement previously and said— The District Court said, although the guidelines are, as I indicated, 121 to 151, this was after probably six pages of the sentencing transcript where he's resolving adjustments because the PSR came back at a higher range than in the plea agreement and arrives between the two. So, isn't that the range we look at as the range determined by the District Court before he departed to a below-guideline sentence and accepted the plea agreement? I would say no. Why is that? The reason is, it's the acceptance—and this is the Court, Judge Sotomayor's opinion— it is the acceptance of the Rule 11 agreement that binds the Court to that Rule 11 agreement into its terms. Now, what makes this case, I suppose, the next step is—and what the government has raised as other— it must be also consistent with a policy statement and relying, then, on 1B1.10 and this applicable guideline range. And what is it? It's in the plea agreement. You look again in the plea agreement. Why would he spend six pages of the transcript resolving how many levels, what criminal history, about role, all these different adjustments he made to the PSR? Wouldn't he have just said, I disagree with the PSR, I'm going to go with the range in the plea agreement, and it's 97 to—what was it? 121. 97 to 121. Why would he waste the six pages of the transcript if he hadn't really thought through and pegged it at something? That's what we're worried about, I think, is— The Court may go through that analysis in helping it arrive at whether to accept this plea agreement or not. But once it accepts, it is bound. Otherwise— Why do those become the guidelines? Don't those become a variance from the guidelines that the Court has agreed to bind? Will bind its sentencing? I would say if we solely look at the plea agreement here, it says— The range was based on the calculations. It is also saying that we, the parties, say that this is its actual guideline calculation. Well, it says it in several ways. For example, when it's laying out— or adjustments apply, it uses the word apply. So say, for example, the three-role adjustment or apply. All right, I see here at page 13, in paragraph 13, they say the government and the defendant agree to the sentencing guidelines calculations set forth in this agreement. Yes. Well, there are several— And then it says at 15, the defendant understands the Court is not bound to accept any sentencing guidelines calculations. Yes, yes. This is why I'm asking, why isn't what happened here? The judge calculated his guidelines higher, but then it said it would agree to the range set by the parties, and that's effectively agreeing to a variance. Well, if we allow ourselves to look at the statements, I disagree and make the argument in the brief that in the end here, what the judge did was go along with the factual resolution of a dispute as to whether this was a three-level increase for role and whether it was one or two criminal history categories. He didn't do that. The judge calculated himself. By the way, you understand that the argument I'm advancing to you for a possible reduction for your client, it's just that it would be to only 97 months, not the 70-some-odd months, but it would find him eligible for a guideline reduction. Well, certainly from my, Mr. Leonard's standpoint, if what he obtains is the eligibility to 97 months, he certainly would be, you know, any ability to go back to court and ask the court to review his case to see whether under the 3553 factors he would now. It would have a floor of 97 months because that's what the rule says. It can't be lower than what the reduction would be. All right, let's hear from the government on this. Thank you, Your Honor. Thank you. May it please the Court, Frank Pimentel for the United States. From the tone of the questions, I think the court obviously has a complete understanding of what the government's argument here is. I'm not sure you're arguing that he's not eligible for a guideline reduction at all. Well, that's correct. What do you think the guideline range was here? The correct, the 1B1.A guideline range? The applicable guideline range. 121 to 151, as the judge said and put in the statement of reasons. Well, if that's the applicable guideline range, that range has been reduced now. Correct. 97 to 121. Yes. That 114-month sentence, why isn't he eligible for a reduction up as little as 97 months? Because 3582C2 requires or makes a defendant eligible only when the sentence that he received was based on the applicable guideline range. I think that someone who gets a variance or a departure has his sentence based on the guidelines. That's what a variance or departure is. Yes, correct, Your Honor. But this was not technically a departure or variance because it was a C1C agreement. What else is it but a variance then? It's an agreed upon variance and the judge says, you know what, I agree. Well, I don't think that the variance part was agreed to as such. Isn't that what we're obliged to conclude from the five-member coupled majority in Freeman, that someone who gets sentenced pursuant to an agreement can be eligible for a reduction? Correct. Your Honor, if I may, I would like to illustrate what I think Freeman says in that respect. The quintessential Freeman case would be, as Your Honor noted during questioning, a situation where the plea agreement says that the parties agree that the defendant shall be sentenced to a term or within a range defined by guideline section 1B1.1A. Okay? That would be the quintessential Freeman case pursuant to a C1C. The further you get away from that, the less likely Freeman is going to apply. I don't disagree, though, that if he had been sentenced to 114 months without an 11C1C plea, that the judge had decided to exercise his booker discretion to grant a variance, that he'd now be eligible for a reduction. No question about it, Your Honor. No question. Didn't the district court really look at two different ranges, the range that he determined was the correct guidelines calculation as well as the range in the plea agreement? He did. And on that theory, why wouldn't the defendant be eligible for a further departure down to 78 to 97 on the theory that the range within the guidelines indeed was a basis for the sentence? Well, I think that that gets to the error, and I will call it an error, in the McCall decision. McCall says, by having accepted the parties' plea agreement, the district court was bound by its terms, and this is the important part, including the guidelines range contained within the agreement. That statement runs afoul of the guidelines. The guidelines require in an 11C1C plea that the district court, pursuant to 6B1.2C, properly calculate the guidelines and then determine— But, you know, this case is a little bit different from some of the others because the parties only agreed on a range. They didn't agree on a specific sentence, right? In McCall and in Freeman, the parties agreed on the specific sentence. And so here, the district judge still has to decide where to go within the range, right? Within the agreed-upon range. Yes. And in deciding where to go within the agreed-upon range, is the district judge not looking at the factors under the guidelines and weighing all of that? No, Your Honor. I think what he's doing, and in fact I think he says it in the record, is he's doing that within the confines of 3553A. He was not, at the time where he was deciding where to sentence the defendant, between 97 and 121, using the guidelines at all. The guidelines suddenly drop out of the picture? Correct. At that point? Pursuant to 3553A. Why did he make those findings, though, that I asked your adversary about, where he got a higher guideline range from the PSR and spent quite a bit of time resolving those issues and specifically came up with a guideline range of 121 to 151, which was not the range in the plea agreement? Why waste all that time if he just went along with the plea agreement? Because he's required to do that, Your Honor, by 6B1.2C. And that's the range that resulted, right? The 121 to 151. Correct. He's required by 3553A to consider the guidelines. Correct. That is one of the 3553A factors. So to suggest that the judge didn't consider that, well, this was a variance that he had agreed to, the guideline range would have been higher, whatever, to think that that didn't play into it is curious to me. He was obliged to consider the guideline range. Well, but even Freeman says that that doesn't mean that a defendant that's entered a C1C agreement is eligible. Even Justice Sotomayor recognizes— Who in Freeman says that? I mean, you know, you've got to make sure we're talking about a controlling statement. Your Honor, I recognize that the dissent doesn't think this is a guideline sentence at all once you get into 31C1C, but I would think the majority, there's five members who don't agree with that. Your Honor, I don't want to take up the Court's time, but I— All right, we'll look at it. Anything else? You do have some more time. Your Honor, I think that that's—essentially we've made the argument. Basically what it boils down to is that 3582C2 contemplates a threshold inquiry. That is a determination whether we're dealing with a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered, and then if such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission. So you have to—to be eligible, you have to have a sentence that is based on the applicable guideline range. That's consistent with what Justice Sotomayor says in Freeman, and in this case, that is not what happened. Not in the footnote, but I think the Court—Your Honor already addressed that. And furthermore, that footnote was abrogated as this Court recognized in the Steele case by Amendment 759, which clarified that applicable guideline range means the 1B1.1A sentencing range, that which was enacted after Freeman. So that footnote essentially—Amendment 759 addressed that footnote and made it inapplicable going forward. Thank you. And I would ask, Your Honor, that the Court affirm the District Court. Thank you.  Thank you, Your Honor. To further answer Judge Droney's question about what did the District Court do here, it's Mr. Leonard's view that, yes, there were very strong statements by the Court about, we have a different higher guideline calculation. But what is critical here? And then there's arguments by defense counsel made in the meantime, no, the calculation is right. And then, in the end, the judge says, before he says he's accepting the agreement, he says this. To the extent there is—I'm sorry. I'm sorry, this is at appendix page 94, first paragraph—I'm sorry, second paragraph. To the extent there may be some issue as to whether it should be a three-point enhancement or a four-point, and to the extent there may be some issue as to whether the criminal history is one or two, but I guess mostly because of the fact that the parties negotiated this. Then he continues on, and then saying, but after the presentation here of your lawyer and the government, I will state that I am prepared to accept the Rule 11c1c commitment, which commitment was that the Court impose a sentence within the range of 97 to 121 months, not more, not less. So for those reasons, I make that finding. Why don't you read the next sentence, too? Yes. Although the guidelines are as I indicated, 121 to 151, nonetheless, having considered all the factors, including section 3553A, some of which I will articulate, et cetera. So the judge, yes, the judge is saying then under—this is not an easy record on this. I admit. But what I would say is in one position, and I think McCall has very strong language on this, is that there is a very important consequence when a judge accepts an 11c agreement. And in McCall, and this is— Of course there are findings, but it doesn't go to whether those become the applicable guidelines. I mean, there's something disquieting about saying that even though the judge has calculated and repeatedly said the guidelines are 121 to 151 months, that because he agrees to sentence at a lower range in an 11c1c, those become the applicable guidelines. I mean, it seems to me you're not able to explain to me why that's not an agreed-to variance, not an agreed-to applicable guidelines. Well, I point to language in McCall, and in McCall it's explicitly saying that once the judge accepts the 11c agreement, he's bound to the calculations. It's an aggregated issue in the case. The parties agreed to be bound by Justice Sotomayor's footnote. We're now asking you why we should make that the law of the circuit. And what I—it is that once it's accepted— it's almost, in a sense, I don't know that it would be correct to put it this way, but I kind of view it this way. Once the government and the defendant are part of the agreement, the judge then looks at the agreement. The judge has the right power to sign on or sign off, in effect almost become a party to that agreement. Agreed, and it has to sentence within it. That doesn't mean they're the applicable guidelines. Well, and that's—the argument here is it's not simply when the judge is, I have to sentence to that sentence. It is to the— It's the following sentencing range, but that's a different question from whether it is the guidelines or whether your client's getting a reduction from the guidelines. Well, Your Honor, I would submit that when the agreement contains an explicit guideline calculation, the parties agree to that guideline calculation. When the judge accepts that agreement, he accepts that calculation, and that's why it is the applicable guideline. If the parties had said that the applicable— if they had said that he would be sentenced within the range of zero to six months, even though the judge calculated the guidelines at 121 to 151, the applicable guidelines would have become zero to six months. It would have been whatever the party— Okay. Thank you very much. We're going to take the matter under advisement, but thank you for your arguments. Thank you, Your Honor.